**Fried, Frank, Harris, Shriver & Jacobson LLP**

One New York Plaza
New York, New York 10004-1980
Tel: +1.212.859.8000
Fax: +1.212.859.4000
www.friedfrank.com


FRIED FRANK

Direct Line: 212.859.8592
Fax: 212.849.4000
steven.witzel@friedfrank.com

February 26, 2008

**BY HAND**

The Honorable Colleen McMahon
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

```
USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 3/6/08
```

Re:  *United Stated v. Bolivar Ramirez-Tiburcio*, 07 CR 895-01 (CM)

Dear Judge McMahon:

We respectfully submit this sentencing memorandum on behalf of Bolivar Ramirez-Tiburcio, who is scheduled to appear for sentencing before this Court on March 5, 2008. Mr. Ramirez-Tiburcio pleaded guilty to a one-count indictment charging a violation of 8 U.S.C. §§ 1326(a) and (b)(2) for unlawfully reentering the United States. On December 11, 2007, Mr. Ramirez-Tiburcio entered his plea before the Honorable Theodore H. Katz, and Your Honor accepted the plea on January 16, 2008.

As the Court is aware, the Supreme Court's decision in *Unites States v. Booker*, 543 U.S. 220 (2005), and the Second Circuit's decision in *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005), *cert. denied*, 127 S. Ct. 260 (2006), direct the district courts to thoroughly consider all of the factors identified in 18 U.S.C. § 3553(a) in arriving at a just sentence. Subsequently, the Second Circuit further explained that it would accept that the sentencing court has appropriately considered the Sentencing Guidelines where it is clear that the judge was "aware" of the Guidelines range or ranges arguably applicable, and then, having considered all of the other § 3553(a) factors, imposed a sentence that was not unreasonable. *United States v. Fleming*, 397 F.3d 95, 100 (2d Cir. 2005).

The mandate of 18 U.S.C. § 3553(a) is for the court to "impose a sentence sufficient, but not greater than necessary, to comply" with the purposes of sentencing set forth in

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon  February 26, 2008
Page 2

the statute.[1] In Mr. Ramirez-Tiburcio's case, "the nature and circumstances of the offense and the history and characteristics of the defendant," as well as "the need for the sentence imposed to protect the public from further crimes of the defendant," justify lenity and a term of imprisonment on the low end of the advisory Sentencing Guidelines range.

> **A.  The Nature and Circumstances of the Offense and the History and Characteristics of the Defendant**

In making a determination about the appropriate sentence to impose, the sentencing court should consider "the nature and circumstances of the offense and the history and characteristics of the defendant." 18 U.S.C. §3553(a)(1). We urge the Court to give due consideration to Mr. Ramirez-Tiburcio's family circumstances and the nature and motivation behind the offense.

Mr. Ramirez-Tiburcio is a thirty-seven year old man who was born in Santo Domingo, Dominican Republic.[2] He and his sister, Iris, were raised by their mother and a maternal aunt in an economically deprived environment.[3] His father abandoned the family when Mr. Ramirez-Tiburcio was eight years old.[4]

From an early age, Mr. Ramirez-Tiburcio had to undertake the responsibility of providing for his family. He reports that he could not continue his education after

---

1 The Court, in determining the particular sentence to be imposed, shall consider:
  (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
  (2) the need for the sentence imposed --
   (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
   (B) to afford adequate deterrence to criminal conduct;
   (C) to protect the public from further crimes of the defendant; and
   (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
  (3) the kinds of sentences available;
  (4) the kinds of sentence and the sentencing range established;
  (5) any pertinent policy statement . . . issued by the Sentencing Commission . . .;
  (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
  (7) the need to provide restitution to any victims of the offense.
 18 U.S.C. § 3553(a) (West 2006).
2 Presentence Investigation Report ¶33.
3 Id. ¶35.
4 Id.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon  February 26, 2008
Page 3

eighth grade because he had to work full-time to provide for his mother and sister.[5] At that time, he learned the carpentry trade.

In addition to a 19 year old son and an 18 year old daughter who reside in Spain, Mr. Ramirez-Tiburcio has six young children ranging in ages from 15 years old to two years old from two different unions, all of whom live in the Dominican Republic.[6]

During his imprisonment, Mr. Ramirez-Tiburcio has maintained daily telephonic contact with Sandra Miriam German-Carmen, with whom he has four children: (1) Alejandro Ramirez-German, age 15; (2) Grecia Maria Ramirez-German, age 13; (3) Brandy Alejandro Ramirez-German, age nine; and (4) Heriberto Alejandro Ramirez-German, age five. Mr. Ramirez-Tiburcio and Ms. German-Carmen have maintained a relationship since he was 21 or 22 years old.[7] Defendant also provides for two very young children whom he fathered with Isaura Velos: Anthony Ramirez-Velos, age three, and Isaura Ramirez-Velos, age two.[8] Mr. Ramirez-Tiburcio also maintains regular contact with Ms. Velos, who also lives in the Dominican Republic. Mr. Ramirez-Tiburcio has always endeavored to support all of his children.

Mr. Ramirez-Tiburcio reported that his 13 year old daughter, Grecia, suffers from chronic headaches and has developed a speech impediment as a result of an accident that she suffered at age nine. According to Mr. Ramirez-Tiburcio, a marquee sign fell on her head and she has exhibited these symptoms since the accident.[9]

Mr. Ramirez-Tiburcio is the primary source of financial support for his six youngest children. Since having learned the trade at an early age in the Dominican Republic, Mr. Ramirez-Tiburcio has earned a living as a carpenter.[10] Throughout the time he was in the United States, he worked as a day-laborer in general construction for which he was paid a daily wage of up to $125.[11] He sent much of this money to the Dominican Republic to support his children.[12]

On June 26, 2003, Mr. Ramirez-Tiburcio was convicted of criminal possession of a controlled substance under New York state law. After serving over eight months of his sentence, he was transferred to federal custody and deported from the United States to the Dominican Republic on March 10, 2004.[13]

---

5   *Id.* ¶47.
6   *Id.* ¶36-38.
7   *Id.* ¶37.
8   *Id.* ¶39.
9   *Id.* ¶38.
10  *Id.* ¶50.
11  *Id.* ¶49.
12  *Id.* ¶51.
13  *Id.* ¶40.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon            February 26, 2008
                                                                                        Page 4

Unable to earn a sufficient salary in the Dominican Republic to support his family, Mr. Ramirez-Tiburcio admittedly returned to the United States in December 2006. He once again obtained work as a day laborer. Subsequently, in March 2007, he was arrested and charged with criminal sale of a controlled substance in the 1st degree in New York County Supreme Court, and he has been incarcerated since.[14] Mr. Ramirez-Tiburcio was transferred to federal custody on October 23, 2007. Mr. Ramirez-Tiburcio is contesting those charges, which remain pending. It is possible, however, that those charges could result in a sentence of incarceration, which may run concurrently or consecutively to the sentence imposed by Your Honor in this case.

Mr. Ramirez-Tiburcio has acknowledged that his conduct in returning to the United States was wrongful and illegal. We urge the Court, however, to consider that his return was motivated by a desire to feed, clothe and house his children in the Dominican Republic. Prior to his arrest in March 2007, from his daily wages of approximately $125, he sent $150 a week to Ms. German-Carmen, and $50 a week to Ms. Velos.[15]

Such consideration has support in case law in this Circuit, where some courts have demonstrated a willingness to consider family circumstances in coming to an appropriate sentencing determination. *See United States v. Alba*, 933 F.2d 1117, 1122 (2d Cir.1991) (upholding a Guidelines departure where defendant supported his wife, two young children, and his disabled father); *see also United States v. Aristizabal*, 2007 WL 4555900 (07-CR-101-01) (E.D.N.Y. December 20, 2007) (considering all the elements of 18 U.S.C. § 3553(a), the court departed from advisory Guidelines range because "the defendant has a good relationship with his wife and children and he has been trying to support them."); *United States v. Zambrano*, 07-CR-301, 2007 WL 4115993 (E.D.N.Y. Nov. 20, 2007) (the district court issued a sentence significantly below the advisory Guidelines range because defendant charged with illegal re-entry had "returned to the United States in order to financially assist his wife and two children," who were U.S. citizens).

Mr. Ramirez-Tiburcio has been in custody for 11 months and has not been able to provide any financial support to his children during this time. He is very concerned that his children are in a dire economic situation and are experiencing severe hardship without his support. For the well-being of his large family, it is imperative that Mr. Ramirez-Tiburcio complete his sentence and resume his duty of providing for the welfare of his children as soon as possible.

The toll that Mr. Ramirez-Tiburcio's misconduct has exacted on his family, and his children, in particular, is significant, and we respectfully submit that Mr. Ramirez-Tiburcio's family circumstances warrant consideration by the Court in granting a sentence that is at the low end of the advisory Guidelines range.

---

14     *Id.* ¶¶ 6, 30.
15     *Id.* ¶ 51.

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon  February 26, 2008
Page 5

### B. Mr. Ramirez-Tiburcio's Mandatory Deportation Ensures That the Public is Adequately Protected

The objectives of 18 U.S.C § 3553(a)(2) also include "the need for the sentence imposed…to protect the public from further crimes of the defendant." That Mr. Ramirez-Tiburcio faces mandatory deportation after serving his sentence furthers this purpose.

Recently, the Second Circuit has indicated that, in some cases, mandatory deportation may be a valid factor to consider when imposing a sentence. *United States v. Wills*, 476 F.3d 103, 109 (2d. Cir. 2007). While it held that deportation is not an appropriate consideration to apply to every member of the class of deportable convicts without considering individual circumstances, the Court noted that: "[I]t may be that a sentencing judge can consider deportation when he or she identifies, with some particularity, why a specific defendant is certain to be deported and why deportation, in light of that defendant's individual circumstances, will serve the public." *Wills*, 476 F.3d at 109.

Notably, other Circuits have also concluded that mandatory deportation following a period of incarceration is a valid basis on which to order a sentence at the low end, or even below, the applicable advisory Guidelines range. *See United States v. Ngatia*, 477 F.3d 496, 502 (7th Cir. 2007) (affirming the below-Guidelines sentence and noting that "[c]onsidering that it is almost certain that Ngaita will be deported following her release, she will be incapacitated from further drug importation to the United States."); *United States v. Thomas*, 446 F.3d 1348, 1356-57 (11th Cir. 2006) (affirming lowest possible Guidelines sentence where court correctly calculated the guidelines range, considered the guidelines to be advisory, and took into account §3553(a) factors including that defendant faced deportation after his incarceration).

It is inevitable that Mr. Ramirez-Tiburcio will be deported after he serves his sentence and any sentence imposed in connection with his pending state charges. His deportation will serve the public both here and in the Dominican Republic by getting him out of the country where he has twice been arrested on drug-related charges, and sending him to be with and support his children. His primary concern is to provide for his six minor children through employment in the Dominican Republic. Without him available to work, he has repeatedly expressed concern that both she and Ms. Velos are having an extremely difficult time providing necessities for his children. It is therefore appropriate for this Court to consider his mandatory deportation in coming to a just sentence.

Mr. Ramirez-Tiburcio has accepted responsibility for the illegality of his actions with a full understanding that he may not attempt to re-enter, and he has consistently and

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon          February 26, 2008
                                       Page 6

resolutely stated that he has no intention of returning to the United States. He recognizes that a sentence of several months is justified by the circumstances of his actions.

In imposing a sentence that is appropriate and adequately addresses the nature of Mr. Ramirez-Tiburcio's offense, we urge the Court to consider mitigating circumstances, including defendant's individual family circumstances, his remorse for his conduct, his acceptance of responsibility, that he will be deported upon serving his prison sentence, and that he knows he can never re-enter the United States again.

### C.  The Advisory Guidelines Sentencing Calculation

Sections 3553(a)(4) and (a)(5) direct the Court to consider "the kinds of sentence and the sentencing range" established for the offense in the Sentencing Guidelines, as well as "any pertinent policy statement."

The Probation Department calculated an advisory Guidelines base offense level of eight, pursuant to U.S.S.G. §2L1.2, and recommended the following adjustments: (1) a four level increase pursuant to §2L1.2(b)(1)(D) because Mr. Ramirez-Tiburcio was convicted on June 26, 2003 for criminal possession of a controlled substance; and (2) a two level decrease for Mr. Ramirez-Tiburcio's acceptance of responsibility. Pursuant to §4A1.1, Mr. Ramirez-Tiburcio receives three criminal history points for his prior sentence of imprisonment and two criminal history points because defendant was on parole when he committed the instant offense.[16] Mr. Ramirez-Tiburcio is therefore in criminal history category III and the Sentencing Guidelines range is 10 to 16 months of imprisonment.

The Probation Department's calculation differs from the letter that the government provided to Mr. Ramirez-Tiburcio pursuant to *United States v. Pimentel*, 932 F.2d 1029 (2d Cir. 1991) because the government did not take into account that Mr. Ramirez-Tiburcio was on parole when he re-entered the United States. That fact resulted in a higher criminal history category. Mr. Ramirez-Tiburcio, therefore, understood his projected Guidelines range to be 8-14 months' imprisonment when he entered his guilty plea.

Taking all factors into account, a sentence at the lowest end of the advisory Guidelines range of 10 to 16 months is "sufficient, but not greater than necessary," in accordance with 18 U.S.C. § 3553(a)(2), and represents a just and reasonable sentence for Mr. Ramirez-Tiburcio.

---

16   *Id.*

Fried, Frank, Harris, Shriver & Jacobson LLP

The Honorable Colleen McMahon　　　　　　　　February 26, 2008
　　　　　　　　　　　　　　　　　　　　　　　　　Page 7

For the foregoing reasons, we respectfully request that the Court sentence Mr. Ramirez-Tiburcio to a sentence of no longer than 10 months' imprisonment.

　　　　　　　　　　　　　　　　　　　　　Respectfully submitted,

　　　　　　　　　　　　　　　　　　　　　*[signature]*

　　　　　　　　　　　　　　　　　　　　　Steven M. Witzel

cc:　　Carrie H. Cohen, AUSA (By Hand)

563900